The first case on today's docket is cause number 24-30272 and White Hat v. Murrill Is the appellant ready to proceed? You may proceed. Good morning and may it please the court, I will address standing and sovereign immunity and my counsel, my co-counsel Bahar Azmi will address the merits of plaintiff's First and Fourteenth Amendment claims. All right, counsel, I'm going to ask you to keep your voice up, please. And we'd like to reserve two minutes for rebuttal. All right, noted. This challenge to the 2018 amendments to the Louisiana critical infrastructure law is brought by people who are chilled from exercising their First Amendment rights in the vicinity of pipelines, including private landowners and those who have already been arrested and charged with violating the statute. I'll address standing first and then sovereign immunity. For these claims to proceed, it is enough for this court to find that one plaintiff has standing and here under clear circuit and Supreme Court precedent, all plaintiffs do. I'll address plaintiffs in three categories as we have in the briefs, the arrested plaintiffs, the landowner plaintiffs, and the organizational or advocacy plaintiffs. So first, the plaintiffs who were arrested under the statute in 2018, the district court correctly found that these plaintiffs have standing and this is because injury to those plaintiffs is clear. Even... The big issue is redressability, right? The DA said, I'm not going to prosecute them. So what's the case that says that that doesn't sort of move this matter for them? The DA's disavowal of prosecution might have been relevant to their claims as applied, although Seals v. McBee says that a disavowal of prosecution would not be sufficient there. But this is a facial challenge to the statute and the basis for these plaintiffs' standing is that they're chilled from exercising their First Amendment rights in the future. So it's a perspective, it's seeking perspective relief. So the fact that the DA has disavowed prosecution for the 2018 arrest doesn't mean that any future action or activity cannot be subject to prosecution. So injury to those plaintiffs is clear because they have a history of exercising their First Amendment rights in the vicinity of pipelines. They were arrested under the Critical Infrastructure Law for doing so, and they intend to continue to exercise their First Amendment rights in the future. And this is arguably prescribed by statute, and there's a credible threat of enforcement because being in the vicinity of pipelines is, at the very least, arguably prescribed by the statute, and there's a presumption of a credible threat of enforcement under Speech First v. Fenves. But you're not challenging the general trespass laws, correct? Excuse me? You're not challenging the general trespass laws? We are not. And isn't it true that one of the majority owner of this parcel said, I don't want them on our property? One of the majority owners did, but there's a crucial difference between the trespass statute and the Critical Infrastructure Law. And that is that the Critical Infrastructure Law seems to give a pipeline owner authority over the entire 38 acres of the landowner plaintiff's property. So if we're looking at the landowner plaintiffs, for example, they are not chilled when one of their co-owners has the ability to say who can and can't assemble on their property. They are chilled when a pipeline company has the authority to say who can and can't assemble on their property, and what they intend to speak about is the pipeline. Well, nothing is chilled if the pipeline company has an easement that gives them the right to do so within the easement. The easement in this case is not clear that the pipeline company has the right to exclude. It is not clear from the record that just based on the easement, the pipeline company would have the right to exclude guests who are invited onto the property. Well, that's getting a little bit into the facial. Yes. Right. You used the expression vicinity of. As I understand it, the state's sort of saying the right of way itself. In the 2018 arrests, they were clearly marked, correct? In the 2018 arrests, they were not clearly marked. They were stakes with ribbons. No, in fact, on the August 18th arrest, two plaintiffs thought that they were not in the right of way. I mean, setting aside the fact that the pipeline was there illegally, they thought they were not in the right of way because it wasn't marked. They thought they were out of the right of way because they were in an area where the trees had not been cleared. So it was only after their arrest and on the way to the jail that an officer who was there said actually, it seems like they might have been in the right of way. You were going to go to the landowners, and I guess, does it come down to whether in the operative complaint they alleged that they had concrete plants to invite other people to protest? Is that the analysis? Right. Yes. So, yes, under Susan B. Anthony List and Speech First, the analysis is whether they have alleged an intent to engage in protected conduct, and here, the protected conduct is the intent to invite speakers onto their property to associate with the speakers on. But in the complaint, it says, we would do it but for the fear of felony prosecution. Is that? They would have to say that they, in the complaint, they would say that we intend to engage in this protected conduct. Just to be clear, the protected conduct is associational? It's associational and expressive and exercising their property rights. So I think there's three levels of protected conduct here. The first is the associational act of associating with speakers who oppose pipelines. The second is the expressive act of hosting speakers who are expressing an opposition to pipelines. And then the third is the exercise of their property rights in the sense of using. And none of those rights, at least the first two categories, are abridged at all except for the parcel in question. They can do any of those things anywhere else but for this pipeline right-of-way, correct? They, well, they might be chilled from doing that in other property and public areas, too, because of the vagueness of the statute and the statute. Well, it might be and it could be and it sounds like an awful lot of conjecture and I guess what I'm trying to get, what I'm trying to sort out with regard to the landowners is how do we reconcile the majority landowners, the majority interest holders with these very tiny fractional interests who are basically asserting the right to control the property which they, I don't think they would have that under Louisiana property law. How does this ever arise in, I mean, this is a dispute between landowners, is it not? No, because like I said, the issue that the landowners, the cause of the landowner's injury is that a pipeline company has a say over their property. But what if the majority landowner says, I don't want these people on my property, period? How has the pipeline company got anything to do with that? And my understanding is that's what the majority property owner did here. I think this factual analysis would be especially relevant if this was an as-applied challenge but in Speech First v. Fenves, the court is really clear that when you're looking at a facial challenge to a statute, it is enough for a plaintiff to allege or show that they are part of a class that is regulated under the statute. And if they're part of that class that is regulated under the statute, there's a credible threat of enforcement of the statute against them. So this kind of fact-specific analysis is not as appropriate in the facial context as it might be in the as-applied context. I see I have just about 30 seconds left, so I'd like to rely on our briefing regarding to the advocacy plaintiffs who are not arrested but want to protest in the vicinity of pipelines with regard to their injury. But I would like to address traceability with regard to those plaintiffs because their injury is traceable to the AG and not the local defendants. Maybe start with the AG. In other words, what's your best case that the Ex parte Young exception would apply to someone that has that sort of distant supervisory role? The two cases I would point the court to are Book People, Inc. v. Wong, where the commissioner was held to not be immune, although the prohibition at issue was applied by school districts. The commissioner had supervisory authority over school districts. And then Texas Democratic Party v. Abbott, where the secretary of state was not immune because although it was local clerks who administered the mail-in ballots, the secretary of state had a kind of supervisory authority over those local clerks. All right. Thank you, counsel. Your time has expired. May it please the Court, if I may, for the appellants, I'll be addressing the merits of the First and Fourteenth Amendment, but I just want to start with the observation that this is no ordinary trespass statute of the kind that U.S. courts have been accustomed to dealing with for over 200 years. Its scope covering 125,000 miles of frequently unmarked and underground pipelines, including on public property, its vagueness lacking any of the limiting features of the neighboring statutory provisions, which require complete enclosure and which has led the defendants in this case to take four different positions on the premises and the district court to define it two different ways, and that its criminal consequences, producing a felony conviction not for damage or obstruction, but for mere presence, make this unconstitutional. But it's not mere presence. They've got to be asked to leave by somebody authorized to ask them to leave, which is exactly what happened here. Yes. But if the statute is vague and in violation of the First Amendment, no one is, in fact, authorized to tell them to leave, and that's the fundamental problem. We just ignore those parts of the statute that would otherwise limit its reach and we just go straight for the parts you want to say are overbroad? No. I think we're focused on A3, which, Your Honor, is unlike A1 or A4. So we're not comparing it to a normal trespass statute. Within the very statute we're dealing with, a critical infrastructure statute, the legislature knew in A1 to require a complete enclosure and in A4 to require a complete enclosure. In A3, one is left guessing completely where an underground pipeline might be, including underground pipelines on public property. And on the public property point, I think the district court's limiting construction is inappropriate as a matter of the judicial role and also inaccurate as a matter of statutory interpretation. The Supreme Court for 20 years has told us to be faithful textualists and look exclusively at the text and not what we wish was there, or specifically not to add words, particularly— Just quickly, because your time's—I mean, I agree with you to focus on the Fourteenth Amendment more, but I'm sure you want to get to the First Amendment. But so on the vagueness issue, what's your best case that the district court, trying to avoid a constitutional invalidity, can't redline out public protesting? There are a number of Supreme— But just your best one. I would say the low max is 140 Supreme Court, 1721. That's a case that says you can't add words. And the Attorney General's own case, Senezzo, which is a Fifth Circuit case, that even dealt with the modest process of no citer, interpreting a word among others, which one can do. And even there, the Fifth Circuit said it's not readily susceptible. Let's assume we're just looking at private property. You would still say facial invalidity because people in the vicinity just don't know where they're going to become a felon, correct? Correct. I think Louisiana's response, in part, we'll hear from them, is, well, the land records inform them, and furthermore, someone's going to have to forbid them. Understood, Your Honor. With respect to that, I just do want to note, and this is not to be critical, this statute is confounding. The defendants in this case have taken four different positions on what premises means. And I just underscore that because it reveals if very learned attorneys here misunderstand what the statute means, the average citizen is going to be confused. And with respect to looking at, they currently take the position that you can look to the right of way and use workaday property law or looking at servitudes or expropriation judgments that I would respectfully submit. That's a form of hidden law. I mean, it's one thing if I want to build a construction site or a shed, but when dealing with First Amendment activities, I should not have to go, the average citizen should not have to go deep into property records to identify whether or not their liberty interests would be protected. I think that's fairly fundamental from the vagueness jurisprudence. I mean, in Morales, the court didn't say, you can just look up what loitering means. Is Morales your best case that the police can't clarify something that's unconstitutional to begin with? Morales and Cox are our best cases that an instruction, a dispersal order cannot cure a vague statute because one has to, under well-established due process principles, one has to know in advance what is unlawful and cannot rely retroactively on instruction from an officer, particularly if the statute is vague, then the officer may not be giving a constitutional instruction. That is really clear. So if you have, this applies on public property, the term premises is vague and therefore is susceptible to a facial attack. These new enhanced trespass statutes applying to critical infrastructure, those exist in more than just Louisiana. They do, but no- High lines have been tucked in elsewhere, right? Yeah. Those are underground too. Do you have any relevant case from any other state? Well, I would point us to the Oklahoma statute, which was passed around the same time, given the level of protest activity that they were responding to. And the Oklahoma statute is comprehensively requiring a scienter requirement and complete enclosure and markings. So- How do you enclose an underground pipeline? Well, you could have markings, you could have clear markings if you don't want people, and here's a critical point that my colleague alluded to. Even, and why I think the district court's limitation is incorrect, you know, a pipeline's property interest may be to enter for purposes of repair, but the pipeline doesn't have a right to exclude you from the surface. That's beyond their property interest, and the expropriation judgment in this case actually proves that. There's no pipeline authority to exclude somebody who is on top of an otherwise hidden pipeline. So you don't have a statute that you find to be acceptable. The only difference is it has signage- Signage or complete enclosure, and there's a willfulness requirement. I think that would do a lot to preserve this statute, and frankly make it, the other example I would use, Judge Higgins and Judge Graves, is the actual Louisiana critical infrastructure statute, because A1 and A4, which are neighboring provisions, have that requirement. So, you know, I do think it's fundamentally vague, and if I have some time to address the First Amendment, I actually want to start with the principle that this is actually a content-based statute. You say that, you've got to point to the carve-out, which is- You have to point to the carve-out, that's right. So it's a little weird that the carve-out protecting First Amendment activity is actually what makes it content-based. Do you have- Correct, Your Honor, and I would say, you know, that's not unlike, say, a permitting statute that is, you know, asks, authorizes a municipality to authorize one kind of a parade or another. If that permitting statute had distinguished between matters of public concern and matters of, you know, not public concern, as this statute does, under Reed v. Gilbert, that's on its face a content-based distinction. But the carve-out preexisted the Pipeline Amendment, didn't it? I'm not sure, Your Honor. I'll have an answer for you on rebuttal about that, but forgive me. But I think the carve-out, for one, also proves that the legislature intended this to apply to public property. Why else would you attempt a carve-out? And then, as written, you know, in Reed v. Gilbert, the Court says, you know, a statute that distinguishes between directional signs as low-value and ideological signs as high-value on its face as content-based and subject to strict scrutiny, that's before you even get to the discretionary authority of an officer to ascertain whether or not speech is legitimate or not. We don't look at the legislative history, and then we just look at the statutory text and don't think it's content-based. Do you lose? No. We win on vagueness. I think that's our- No, but on the First Amendment issue. No, Your Honor, because I still think that there's a combination of overbreadth and narrow tailoring that work together here. You know, the First Amendment requires precision when the government seeks to incidentally burden speech for a legitimate government interest. The district court accepted the government interest here as damage. Well, this statute is far broader than damage. It prohibits mere presence. And there are cases like Coakley v. McCollum, which is a narrow tailoring case, content-based regulation that requires narrow tailoring, even if you don't get strict scrutiny. They look to all sorts of indicia, like the existence of an independent statute that would regulate this conduct, like an independent trespass statute. They look at comparable jurisdictions to show that this is not as narrow-tailored as it could be. So, I think our primary and strongest argument on the vagueness, particularly since this applies to public property, then First Amendment, we believe it's content-based and then runs afoul of the narrow tailoring requirement. Ten seconds. Wouldn't there be an intent in Section A3 also because you've got to remain on the premises after being told to leave? I think that's a close question. How could it be unintentional? I think that's close to a scienter requirement because one does have notice in advance. I don't think that resolves the problem with a dispersal order of a vague statute. So our argument is not resting on the scienter requirement, although Oklahoma added that. That's what I heard you say is the big distinction with the Oklahoma statute was intent. The primary distinction is enclosure, which is a primary distinction not just with respect to Oklahoma, but with respect to the very same statute. Somehow in Oklahoma they can enclose underground pipelines, but they can't in Louisiana. Well, their primary concern is above-ground pipelines, but it does include underground pipelines, and they require for one to be subject not to trespass, but to the heightened infrastructure, it requires a marking. That's what Oklahoma does, and that's what Louisiana does, no disrespect to Louisiana, in the same statute. Thank you, Counsel. Thank you. Patterson. Thank you. Thank you, Judge Graves. May it please the Court. Contrary to much of Plaintiff's argument, this case is not about a statute that restricts  It is instead about a trespassing statute. The District Court got it right. Louisiana's infrastructure trespassing statute does not violate the First Amendment or the Due Process Clause. This Court, however, does not need to reach the merits. That is because Plaintiff's claims fail right out of the gate. They have failed to establish Article III standing and cannot show that the ex parte young exception applies to waive sovereign immunity. Because jurisdiction is where this Court must begin and where I believe this case should end, I will start by discussing standing. Well, actually, could you, the standing law, I know, I think we know pretty well, I'd be curious to hear the Attorney General's position on the merits, because you cited on page 40, JAV, nothing is a crime which is not clearly and unmistakably made a crime. Are they correct that there's no harm requirement in A3? No harm has to be done to the pipeline premises, is that correct, to get to be made a felon? That is correct. However, the District Court did not just point to wanting to prevent damage. Is there also no enclosure requirement, unlike A1? There is no enclosure requirement, but to go back to the harm point, the District Court also did note that an important purpose of the law was to protect. Okay, and is there no exception for landowners themselves? So regarding the landowner plaintiffs here, they lack standing. No, no, I'm asking you to assume standing for the purposes of my question. I'm looking at the 14th Amendment notice and I'm just worried that people who own their own property, could they be turned into felons if they protest against a pipeline on their own property? Are they given notice, sufficient notice, as to what the, quote, vicinity or premises of a pipeline is? I think in that situation, you would have to look to the specific servitude and right of way at issue. Okay, stop, stop right there, because I think that is the answer. But in the facts that led to the arrest here, BBP called the police to come and say, get them off. And it turns out BBP, which had looked at the records, presumably, was wrong. They were the trespasser, correct? So here, the District Court found... No, no, no, I'm asking you, is it correct that under Louisiana law, BBP, as to this very incident, was found to have been the trespasser? Yes or no? The Bayou Bridge Pipeline? Yeah. There is a court case where they had to pay damages for trespassing as to the landowners, not as to the trespasser. I know, I know, but that means they misread the same records that you are saying would tell all the rest of us. The very person who said, I've got trespassers on my easement, turned out they were the trespasser. How can that then give somebody notice if they couldn't get it right? I think the fact that a law has potentially been applied improperly in one instance is not enough to show that the unlawful applications vastly outweigh the lawful applications. Okay, step back then. Tell me what, just let's pretend we're in the world of jury instructions. So jury, to put someone in jail as a felon, you have to find that they are in or on finish the sentence. What would a jury be told for this new A3 felony prosecution? I'm sorry, are we talking about the landowners here or the protesters? Anyone, landowner or protester, any person living in Louisiana who steps on top of underground pipelines, thousands of miles of it, they can go to jail as a felon. The jury will be told if, tell me the premises. What is the pipeline premise? How do I know not to step on top of one? I think here that there was, it was clearly marked. No, I know that's the as applied issue, but we're looking at it facially. What is a jury told in Louisiana based on this new felony enhanced trespass? Just finish the sentence. If they are on an unauthorized, if they are somewhere without authority and they are instructed to leave.  Somewhere. That's what juries are told? If they are somewhere? No, if they were, if they are within the right of way and the servitude of the pipeline. Within the right of way. So we are imputing to every Louisiana resident that they'll somehow go to the land records and they'll get right what the oil company itself was wrong. Is that the only answer you've got? All trespassing statutes necessarily rely on the underlying state property law. It cannot, if this. Yes, but every case you cited, you'll remember them all. The court. Of course you have to go through screening because you see the building. Then you cited the stadium case. Of course you need a ticket because you see the building. You then in footnote 11 cite Rourke, but Rourke was visible and marked. In other words, what I'm saying is A1 makes sense, but then the legislature throws in pipeline. They haven't thought through an underground pipeline. It's invisible. There's no indication that is going to be interpreted and applied as broadly as plaintiffs assert. It's entirely speculative. Here, it was clearly marked. They were interfering with the servitude. But I'm saying for the future, for an underground invisible pipeline, even as to the owner of property, where can they tiptoe and where can they not? Well, it also has to go with the right of the easement, as I believe one of the judges asked earlier. There is a difference between the right to the surface versus interfering with the servitude. The answer is the land records. You have to know the land records, even though the oil company here ended up being the trespasser. They couldn't get the land records right. Your answer is Louisiana, as to underground unmarked invisible pipelines, can become felons if they don't know the land records. Is that your best answer? That is not what I am saying, Your Honor. And here, the protesters were trespassing. They knew they were trespassing. Counsel, I keep saying, counsel, I'm not asking you here. It's a facial attack. My simple question, and I'll stop, is can you finish the sentence? Jury instruction. Ladies and gentlemen, the jury, you have to find beyond a reasonable doubt that this person, the landowner guest, stepped where? Just finish the sentence. Within the right of way, in a way that interfered with the servitude, and that they were given an instruction to leave by an authorized person and refused that instruction to leave. So it relies on the other property law. Just like all trespassing statutes rely on property laws. To determine whether you're allowed to be on a piece of property or not, it determines, you have to know things like the chain of title. There's sometimes multiple owners. You have to know things such as when the public has a right to access a beach on private property and things like that. So that is not unusual. And here, we've pointed to state cases. But the plaintiff says that there have been arrests under this enhanced trespass for people who are on navigable waterways. They're on a boat above an underground pipeline. They have to somehow know that? So a few responses regard to that. First, all laws are sometimes improperly applied by law enforcement. So one instance of enforcement is not an authoritative indicator of how a statute is interpreted. Second, even assuming that statute or this statute was applied correctly there and they violated the First Amendment rights, again, that's one instance. It's not showing this substantial lopsided showing that plaintiffs have to show. And then finally, in that case, the protesters were on kayaks and canoes obstructing the navigable waterway, which is a crime under state law. I'm just saying I don't want to put people in jail as felons if they don't even know there's a pipeline below them. And your answer is, though, they got to know it. But every single instance you've described, it turns out they were wrong, right? The trespassers here, it was wrong. It was the company that was trespassing. They told the police to go evict them. But the police who say we aren't really sure what it means, they end up being wrong. Here was actually the majority property owner who had a notarized affidavit instructing the police to remove protesters from the property. And it was clearly marked here. Well, a question about these lines, though, slightly different, I think, from Judge Higginson's question. What if the person who tells them to leave, owner, lessee, custodian of the property, or any other authorized person, really isn't authorized? How are they to know that? Well, then that would be a defense to liability. And you see that in Mellicombe, for example. That is where the state court is interpreting the misdemeanor trespassing statute and said that it does not apply to the public sidewalk. And so the officer did not have authority to instruct that person to leave. And so then that's an improper application of— I guess the question is, if we don't know where the easement is for the underground who may or may not be authorized, there's sort of indefinite—indefiniteness on both sides of the equation. This is complete speculation that it's going to be enforced in that way. They can't point to any instance where it was unclear. Here, again, there was—it was marked. Well, again, but we're—I mean, these are easily—this isn't a good conjecture. I mean, what happened here is they told them to get off the property. I mean, the pipeline owner didn't have the authority to do that. It was the officer who instructed them to get off of the property, relying on an affidavit from the majority property owner that did have the right— I think the record—I think the record reflects the pipeline company told them. You think I'm wrong about that? So there were off-duty officers— Right. The pipeline company told the officers. Relying on the affidavit from the majority property owner.  I know. And so they didn't have the right to be there. They don't—they do not challenge the general trespassing. But even then, you've got a majority owner, and you've got fractional owners, and you've got a dispute between who owns what, I guess. Who in the world of the owners is authorized to say, get off my property, especially when another owner says, I want them on my property? So here, the district court determined that under Louisiana law, the majority property owner did have that right, and plaintiffs have not challenged that determination. But regardless, as we're getting to— I agree that that's a situation that would be at least a morass for law enforcement or the state to wade into. Couldn't it be—related to that, I mean, couldn't it be fixed by the Oklahoma statute, if you know it, that he referred to? Just require marking, and then you get the enhanced trespass. No First Amendment as applied or even facial. And I know you want to get to the attorney general's position. But just on this specific little concern about even landowners becoming felons because they don't know where they can step. I think with landowners, they would know the easement and the right of way, and so they would know that here. And here, these are fractional landowners, who only one of whom has ever even been on the property. So we're talking about the sort of speculative advisory opinion about how it might apply in another case. What about the Oklahoma statute? These plaintiffs have not— What about just doing it like A-1 does? Plaintiffs require the state, if they want to put people in jail for a year or more, to at least mark where they'd be a trespasser. That tells you where the critical infrastructure is. I'm not saying that Louisiana couldn't have done it differently, but that doesn't mean how they did it here is improper. And this court, as a federal court, needs to defer to how a state court is likely to interpret that statute. And here we've cited multiple cases indicating that the state courts are likely to interpret this statute in a limited fashion. Kayakers were arrested. The kayakers were arrested. They were violating state law by obstructing a navigable waterway. And that was a waterway's purpose is to navigate down it. Seems like, you know, when the pipeline companies want to arrest protesters, they get them arrested. And in this instance, the protesters were trespassing, and they don't challenge that they were violating the misdemeanor protest. So it's just not accurate to say that they didn't know what they were doing was unlawful. Would you agree there, my colleague asked, and it seems like they conceded, there actually is a scienter requirement. I had thought there wasn't. So that was a further concern of mine. But Judge Wilson's questions, do you agree there is a scienter in terms of they have to stay after they're told to go? They have to stay after they're told to do so. It's not a strict liability felony offense. No, they have to intentionally violate it. And that's similar to what the Supreme Court said in McClellan, where the court said that if you instruct a protester outside an abortion clinic that they must leave or that they are obstructing access to the clinic and they don't leave, that shows that it was intentional instruction.  If police tell somebody to stop filming from the sidewalk, the fact that the police tell them to doesn't change the First Amendment calculation. In other words, as in Morales, if the police are wrong, they can't suddenly somehow make constitutional a vague statute, correct? Well, two responses to that. One, in Mellican, it is from Mellican, it is clear that this statute does not apply to sidewalks. Two, the portion of Morales that they cite to for that proposition is not part of the majority opinion. It was only signed onto by three individuals. And all of this goes to the merits, but again, they don't establish standing. If you look at the two points really quickly. If you look to the declarations of the arrestee plaintiffs, it is all about the past action. The 2018 arrest, and they can no longer be prosecuted for that because the statute of limitations has expired. They have not affirmatively asserted an intent to protest in the future. The closest they get to is Ms. Whitehouse. How long after arrest before the DA said, we won't prosecute you for this offense? I don't remember. It was a long time. I don't remember how long that happened. Can a DA just wait until the statute of limitations and then make this never capable of review by us? Another plaintiff could potentially have standing if they introduce evidence that they affirmatively intend to protest and provide some specificity to establish standing. And that hasn't happened here. If you look at the declarations and if you look at the complaints for the ones who were dismissed on motion to dismiss, they also did not establish standing. I see my time has expired, but I'm happy to answer any other questions if the court has them. All right. Thank you, counsel. Mr. McIntyre. May it please the court. Patrick McIntyre. I'm representing Sheriff Brough in this matter. We briefed the court on the standing issues with respect to the sheriff and claims against the sheriff. And the point is very simply that none of the plaintiffs, the arrestees or the non-arrestee plaintiffs, had alleged any specific intent to have a protest at a particular place within St. Martin Parish at a particular time or anything like that. It's all very general. Maybe someday, and that was Lujan versus the Defenders of Wildlife, this someday I'll get around to it type of pleading is not sufficient. That's all they've got against the sheriff. And what they have to plead against the sheriff is that they're likely to get arrested again. The issue of, well, they're subject to prosecution. The sheriff doesn't prosecute these cases. The sheriff has to be, to be susceptible to an injunction, the sheriff has to be alleged to be, there's an imminent threat of a future arrest. The past arrest, of course, that's not sufficient. That's O'Shea and what was the other one, City of L.A. versus Lyons. The past arrest is not sufficient. You've got to allege that there are circumstances that you're going to be in in the immediate future that'll lead to another arrest, that it's a threatened arrest or something like  Do you know of any case yet in Louisiana where there's been an arrest for being on unmarked underground pipelines on this statute, this enhanced felony statute? No. I don't. How would your officers, how would they know? Well, I mean, generally the pipeline right-of-ways, like this one would be after construction was over. It's going to be cleared. There's going to be a right-of-way. You'll be able to see, you will be on a pipeline. Some pipelines are actually marked. Generally water lines, water mains and stuff like that would not necessarily be marked. And that's where I think the water mains aren't critical infrastructure. So this is the first time, I'm asking you for your officers, you did describe visible marking all that. That makes sense. But this statute doesn't require that. The statute, if you're going to allow trespass, A-1 requires it. On property other than enclosed structures, if you're going to have a trespass law, and there's lots of trespass laws that apply to my own property, the subdivision where I live, it's not enclosed. I mean, there's not a fence all the way around it except the backyard. People can trespass on that. They can be told to leave and they don't leave. That's a trespass. It's the same thing with the pipeline right-of-ways. And just to correct one bit of information for the court, it was the landowner, I think as counsel for the AG argued, it was the landowner who made the complaint that resulted in the arrest. It wasn't the pipeline company. The pipeline company was authorized to make complaints on behalf of the landowner because the landowner wasn't there. And the landowner plans are going to have a stand- The pipeline ended up, the company ended up being the actual trespasser. They were a trespasser as to the minority owners, and had the minority owners made a criminal complaint, maybe the sheriff could have had something to investigate there. But they did not. And we made that clear in our brief. But just one last point about the landowner plaintiffs. They're still going to have a problem inviting people onto the premises because the majority owners still object to it. Thank you, counsel. Thank you, your honor. Mr. Moore.  Yes, your honor. Thank you. Corey Moll on behalf of District Attorney Bo Dewey in his official capacity. With our argument today, your honors, we'd like to address the fact that the district court correctly dismissed the claims against the district attorney, finding that the claims against him were moot, and that plaintiff therefore did not have standing as to the claims that the DA would impose some kind of future prosecution. You heard my question. How long after the arrest was it before your client sent the letter saying, I'm not going to prosecute you? I don't have the exact date in front of me, but I know that it was within the statute of limitations, I believe. Right, but can they wait two years? Over, well, the DA, well, under Article 61, of course, the DA has the inherent authority to decide who, how, and when he's going to prosecute. So they were arrested a couple weeks after they were on this land?  And then there was some time before they were released or immediately released? I believe they were pretty close to immediately released, but that was based on the booking process and bonding out and stuff like that. And then the non-prosecution letter said, we're not going to prosecute you for this incident, correct? Correct. The DA made an affirmative disavowal and with the case technically pending before him as any arrests are referred to the district attorney's office and for that jurisdiction, the DA wrote a letter asserting a formal disavowal. And our argument here is that such a disavowal, number one, in this case, is analogous and comparable to disavowals in the past from certain DAs that have been shown to be an affirmative disavowal. The plaintiff, of course, cites the Seals v. McBee. We draw the court's attention to Judge Edith June's dissent from denying a re-hearing on Bonk and Seals v. McBee where the- We can't go with the dissent. Right. But as- Preserving it for maybe an hour. As instructive that, because it's similar and comparable to decisions from other courts that when you apply it to a fact-based context and determine the redressability and look forward to the certainty or lack thereof of future prosecutions by the same DA, our case here is one that not only is there not any, as Counsel for AG stated, the plaintiff's declaration which is the record evidence of the summary judgment the district court had to go from, there's no record evidence showing enough certainty of future plans to prosecute or future plans to commit an act that the DA would therefore prosecute. And the DA has no prior history of enforcement of this statute. You'd agree that'd be a different case, right, if they said, we're going to go protest next week or whatever they said. I think that would create a new case, a new claim in a separate matter. There would be a fear of prosecution at that stage that might change the complexion of this case. I'm sorry. There would be a fear of future prosecution that might change the complexion of the case. Well, certainly if they are arrested for any statute that has a specific period of limitation and the DA is within his period of limitation to review the statute, then there would be some type of prosecution short of disavowal by the DA and applying the facts of that case. We would note, too, that we cited the Kokesh case from the Eastern District, which, in our opinion, we would argue distinguishes slightly the conclusion drawn in Seals in that Kokesh is very similar to our matter here in terms of no prior history and arrest where the plaintiff was just more vaguely, conjecturally claiming some type of plan to prosecute. Because your time's up. Yes. I have one question. Do you have an answer that I ask the Attorney General? In other words, from the DA's perspective, what is a jury in Louisiana told going forward for felony trespass? Yes. Well, is the, quote, premises of an underground invisible pipeline? How will a jury be told to find that element? Offering my opinion to your question, Your Honor, and I was listening intently on that one, jury instructions are there so that the jury knows what evidence they have to evaluate and how they're to apply the law and the facts of the case. So in that case, the jury would be told that the DA has to prove a certain amount of elements and they have to prove that, A, this was a premises defined as a pipeline critical infrastructure. They would have to prove the server to, but then more importantly, they would have to know that they remained after being forbidden from leaving. So there would be the element of the type of property it is, and then another necessary element of being told to leave that would have to be proven. Counselor? Yes, sir. Let me ask for your opinion on things. You have an opinion as to whether or not a permit requirement would be lawful. For example, if anyone who plans an organized protest on or near this underground pipeline would need to get a permit from the Sheriff's Department in order to have that protest, would that be lawful? Respectfully, Your Honor, I do not have an opinion on the permitting process, given that our stance in this case would be the district attorney applying the Title 14 statutes in the criminal code. And so, with the statute being there, the DA has specifically taken no stake on the constitutionality of the statute itself, and so I would respectfully take the same stance on whether or not a permit would also have any bearing on constitutionality. Thank you, Counselor. Thank you, Your Honor. Rebuttal? Thank you, Your Honor. A couple of facts. I have a question. Would a permit, in your opinion, be a lawful requirement in order to have an organized planned protest? Not as written because of the, still the vagueness concerns. I don't think permitting excuses the legislature from drafting a vague statute, nor... This is a completely separate hypothetical. Oh, okay. Because a permit would put everybody on notice, a permit you would know in advance, and obviously most of these protests are planned, organized protests. Some are, but I think under this statute, anyone, including on public property, could be subject to misdemeanor trespass or in the discretion of an authorized person, which is covered in the statute, they could be subject to a felony. So you could be engaged in First Amendment activity, a book group or whatever, happen to find yourself on the public... Even if you had the permit. Even if you have the permit, yeah. And just a couple of factual clarifications on that before I respond to the Attorney General. Judge Higginson, the statute does cover water, B3 of the statute's pipeline definition includes oil, gas, petrochemicals, minerals, or water in a solid, liquid, or gaseous state. In addition, the kayakers were not arrested for obstruction, they were arrested for mere presence under the statute. Those two features combined, in addition to the plain text of the statute, shows it applies to public property and raises a very serious First Amendment and vagueness concern. With respect to the Attorney General's position, I heard her keep saying that this was sort of a one-off mistake and we're all speculating about misinterpretation. Again, not to be critical, this statute is confounding. The Attorney General has taken four different positions on the meaning of premises in this case, including that it would apply to attractive land, i.e. the 38 acres of the landowner plaintiffs. And then today, I heard her add another one, which is if it interferes with a servitude. And the District Court also has two different interpretations on page 22 and page 30 of its own opinion. Your time has expired. Thank you. Thank you very much. The Court will take this matter under advisement.